**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DELAINA RHODES &
LANCE DRAWDY,

               Plaintiffs,

-vs-                                           Case No. 3:15-cv-593-J-34PDB

TARGET CORPORATION,

               Defendant.

_____/

## <u>ORDER OF SEVERANCE</u>

**THIS CAUSE** is before the Court <u>sua</u> <u>sponte</u>. On November 30, 2015, the Court directed Plaintiffs to show cause why the Court should not sever their claims for trial. Doc. 19. On December 14, 2015, Plaintiffs filed Plaintiffs' Response to the Court's Order to Show Cause Why the Court Should Not Sever Plaintiffs' Claims and Incorporated Memorandum of Law. Doc. 21. In response, on January 8, 2016, Defendant filed Defendant's Memorandum of Law in Support of Severing Plaintiffs' Claims. Doc. 29. Accordingly, this matter is ripe for review.

### I.    Alleged Facts[1]

Plaintiffs are United States military veterans. Doc. 15 ("Amended Complaint") ¶¶ 1–2. Plaintiff Delaina Rhodes has been a member of the United States Air Force Reserves since 2009. <u>Id.</u> ¶ 1, 8. Plaintiff Lance Drawdy has been a member of the Florida Air

---

[1] In evaluating joinder of plaintiffs under Rule 20(a)(1) of the Federal Rules of Civil Procedure, "the factual allegations of the complaint are accepted as true." <u>Edwards-Bennett v. H. Lee Moffitt Cancer & Research Inst., Inc.</u>, No. 8:13-cv-00853-T-27TGW, 2013 WL 3197041, at *1 (M.D. Fla. June 21, 2013) (unpublished) (citation omitted). Accordingly, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

National Guard since July 2014. Id. ¶¶ 2, 17. Rhodes worked as production controller at Defendant's food distribution center in Lake City, Florida, from August 15, 2011, to March 4, 2015, id. ¶ 7, and Drawdy worked as a group leader at the same location from June 2014 to April 7, 2015, id. ¶ 16.

On February 27, 2015, Rhodes met with her supervisor—Scott Owens, the general manager—and informed him that "she would be required to attend military training pursuant to her Air Force Reserves service and therefore would be needing to take military leave for approximately one month in April[ ] 2015." Id. ¶ 9. The following week, on March 4, 2015, human-resources representative Brian Husebo questioned Rhodes about an incident that allegedly had occurred the previous month in which Rhodes reportedly told another employee that "'you better sit down before you get walked out' like another employee who was recently terminated." Id. ¶ 10. Rhodes denied making the comment. Id. Additionally, according to Rhodes, many team members learned of that terminated employee's termination from sources other than Rhodes, and the other employees present during the alleged incident initiated discussion of the terminated employee. Id. ¶ 12. Nevertheless, later that same day, "without further investigation," Senior Group Leader Rosanne DiCicco informed Rhodes that Rhodes was being terminated for conduct detrimental to the workplace. Id. ¶ 11. Rhodes believes that Owens made the decision to terminate her because "he was the only local supervisor with the authority to terminate [her] employment. DiCicco did not have supervisory authority over [her]." Id. ¶ 13. Rhodes asserts that, prior to informing Owens about her upcoming leave, she had not been formally disciplined, and her performance reviews indicated that she had been performing her job "in a highly satisfactory manner." Id. ¶ 14.

On March 17, 2015, Drawdy informed DiCicco, his immediate supervisor, that, in addition to military leave he would be taking from March 18 to April 5, he also expected to be deployed for six months beginning in March 2016. Id. ¶ 18. Drawdy noticed that DiCicco gave a human-resources representative also present during the conversation "an odd look." Id. Upon Drawdy's return from military training on April 6, 2015, DiCicco asked Drawdy to meet with her later that afternoon. Id. ¶ 19. During the meeting, DiCicco questioned Drawdy about "several vague allegations," id., including whether "he had been wrestling with another employee of Defendant some time before Christmas in 2014," id. ¶ 20, and whether he had ever used profanity or heard a member of his team referring to someone as a "white-trash redneck," id. ¶ 21. Drawdy denied wrestling, using profanity, or hearing his team members make inappropriate comments. Id. ¶¶ 20, 21. The next day, DiCicco informed Drawdy that he was being terminated for conduct detrimental to the workplace, although she did not elaborate further on the specific conduct warranting his termination. Id. ¶ 22. Prior to taking military leave and informing DiCicco of his deployment, Drawdy had not been formally disciplined, and his performance reviews indicated that he had been performing his job "in a highly satisfactory manner." Id. ¶ 23. Drawdy believes that there was either no investigation or inadequate investigation of the alleged conduct because "several potential witnesses regarding the alleged incidents were never interviewed." Id. ¶ 24. Drawdy further believes that Owens was involved in the decision to terminate him because no other group leader had been terminated without Owens's involvement in the decision. Id. ¶ 25.

Based on the close proximity between each Plaintiffs' requests for, or taking of, military leave and his or her termination, each Plaintiff believes Defendant unlawfully

terminated him or her because of the Plaintiff's military status and service. Id. ¶ 26. In that regard, each Plaintiff asserts that the reasons Defendant gave for his or her termination were not legitimate, were not the real reasons for the termination, and were "unfounded and manufactured." Id. ¶ 27–28. As such, in this civil case ("the Joined Case"), each Plaintiff separately brings a single claim for violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4335. See id. ¶¶ 35–45 (Rhodes), 46–56 (Drawdy).

## II.   Analysis

Rule 20(a)(1), Federal Rules of Civil Procedure (Rule(s)), provides:

Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A)-(B). Courts are "'strongly encouraged'" to join claims, parties, and remedies, "and the [r]ules are construed towards 'entertaining the broadest possible scope of action consistent with fairness to the parties.'" See Edwards-Bennett v. H. Lee Moffitt Cancer & Research Inst., Inc., No. 8:13-cv-00853-T-27TGW, 2013 WL 3197041, at *1 (M.D. Fla. June 21, 2013) (unpublished) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)).

Whether multiple claims arise from the same transaction, occurrence, or series of transactions or occurrences depends on whether a "logical relationship" exists between the claims. See Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). "The

'logical relationship' standard is a 'loose' one that 'permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits.'" Edwards-Bennett, 2013 WL 3197041 at *1; see also Bollea v. Clem, 937 F. Supp. 2d 1344, 1350–51 (M.D. Fla. 2013); Barber v. America's Wholesale Lender, 289 F.R.D. 364, 367 (M.D. Fla. 2013). Notably, similar issues of liability alone are not sufficient to warrant joinder; the claims must also share operative facts. See Edwards-Bennett, 2013 WL 3197041 at *2.

Regardless of its broad construction, however, Rule 20 "does not mandate joinder, and even when joinder is permissible, courts may refuse it or may sever plaintiffs or claims." Nelson v. Blue Eyed Holdings, Inc., No. 13-60569-CIV, 2013 WL 6238056, at *4 (S.D. Fla. Dec. 3, 2013) (unpublished) (citation omitted). Thus, "even if the technical requirements for joinder are met, the Court has discretion to deny joinder if it determines that the addition of a party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense[,] or delay." Malibu Media, LLC v. Doe, 923 F. Supp. 2d 1339, 1342 (M.D. Fla. 2013) (alteration added; internal quotation marks omitted).

Here, the Court finds that, even if Plaintiffs satisfy the technical requirements for permissive joinder, severance of their claims is warranted because keeping the claims together does not foster the purposes of joinder. Plaintiffs held different positions while employed by Defendant, had different work histories, and were purportedly terminated for different, completely unrelated reasons. Cf. Klimaski v. Parexel Int'l, No. Civ.A. 05-298, 2005 WL 857350, at *4 (E.D. Pa. Apr. 4, 2005) (unpublished) (finding severance warranted for several reasons, including that determination of whether employer discharged employees in retaliation for protected conduct "requires a separate analysis of each party's work performance, qualifications, and the actions taken against him. …

Significantly, the facially plausible justifications offered by [the employer] for each party's termination are unique."); Weir v. Litton Bionetics, Inc., 1986 WL 11608, at *6 (D. Md. May 29, 1986) (unpublished) (finding severance of claims of two plaintiffs warranted where "[t]he work history of each plaintiff was quite different, and the claims and defenses of each can be fairly considered only in the light of the separate work history of each"). Although Plaintiffs allege that the same decision-makers were involved in their terminations, that is only one consideration among many that would be before the Court on summary judgment or the jury at trial. Determining whether an employer unlawfully discriminated against an employee in violation of USERRA is a fact-intensive exercise.[2] Thus, the Court could be faced with separate motions for summary judgment that, apart from involving the same general alleged unlawful conduct (discrimination in violation of USERRA) and some common witnesses, actually involve distinctly different legal and factual issues. The jury could face the same problem if both claims went to trial together. In this case, the Court is of the view that allowing such claims to proceed together would be inefficient and could be prejudicial to Defendant. Cf. Edwards-Bennett, 2013 WL 3197041 at *2 (finding severance appropriate even if Rule 20 requirements were met "because there are no overlapping transactions or occurrences that apply to more than one case," and "it would be fundamentally unfair and prejudicial to Defendant to try

---

[2] To establish a violation of USERRA, an employee must show that his or her protected status was a "motivating factor" in the employer's decision, and relevant considerations include (1) the proximity in time between "the employee's military activity and the adverse employment action"; (2) inconsistencies between the proffered reasons and the employer's other actions; (3) "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity"; and (4) "disparate treatment of certain employees compared to other employees with similar work records or offenses." Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005). If the employee meets his or her burden, the burden shifts to the employer to prove that "legitimate reasons, standing alone, would have induced the employer to take the same adverse action." Id. at 1238–39 (internal quotation marks omitted).

Plaintiffs' claims together where the sets of facts undergirding each claim are mutually exclusive"); <u>Klimaski</u>, 2005 WL 857350 at *5 (finding that allowing claims of multiple plaintiffs to proceed in one case would prejudice defendant because (1) it would "deflect the jury's attention from the merits of each individual plaintiff's claim"; (2) "the evidence admissible for the purposes of one party's claim may not be admissible or relevant to the claims of his co-parties"; and (3) "it would be extremely difficult for the jury, even if given limiting instructions, to consider each party's claim … independently of the others"). Further, the Court finds that joinder of the Plaintiffs' claims here would not "promote trial convenience and enhance the efficiency of litigation." <u>See</u> <u>Malibu Media</u>, 923 F. Supp. 2d at 1343 (quoted). As such, the Court believes the more prudent course of action is to sever the claims.[3]

In reaching this conclusion, the Court notes that Plaintiffs will not be significantly prejudiced by severance at this time because (1) no filing fee is required to maintain a USERRA action, <u>see</u> Doc. 10 (granting motion for refund of filing fee); (2) the parties have completed discovery and therefore have enjoyed the benefit of joinder in that there has been no need for duplication of discovery requests; and (3) the cases will be governed by the existing schedule established in the Case Management and Scheduling Order, so severance will not resort in any delay. Although Plaintiffs contend that "separate trials would likely require substantially duplicative testimony of the primary witnesses," <u>see</u> Doc.

---

[3] In the Order to Show Cause, the Court indicated that, if it found severance warranted, it would be inclined to consolidate the cases for discovery and other pretrial purposes. <u>See</u> Doc. 19 at 1 n.1. However, the discovery deadline passed on February 16, 2016. <u>See</u> Doc. 9 at 1. Thus, the cases need not be consolidated for purposes of discovery.

The parties notified the Court that they have scheduled mediation for March 3, 2016. Doc. 31. The Court leaves to the parties' discretion whether to proceed jointly with mediation as currently scheduled or to conduct separate mediations by the March 10, 2016, mediation deadline.

21 at 6, the Court disagrees. The testimony of the witnesses at each trial presumably would be focused primarily on the circumstances relevant to the particular Plaintiff's employment history and the purported reasons for termination. Although there will no doubt be some overlapping testimony, Plaintiffs have failed to convince the Court that such testimony, which is not likely to be the focal point of the trial, warrants joinder of these two separate and independent claims of employment discrimination.

Because the allegations and claims in the Amended Complaint are already mostly separated by Plaintiff, rather than require the parties to replead, the Court will construe the allegations of the Amended Complaint in this action (case no. 3:15-cv-593-J-34PDB) as addressing only the claim of Plaintiff Rhodes and disregard the claim of Drawdy. The Court will direct the Clerk of the Court to open a new civil case for Plaintiff Drawdy. The Court will further direct the Clerk to enter this Order of Severance on the docket first[4] and then copy all of the docket entries from the Joined Case into Drawdy's new separate case. In Drawdy's case, the Court will not require the payment of a filing fee and will construe the allegations in the Amended Complaint and Answer as addressing only the claim of Plaintiff Drawdy and disregard the claim of Rhodes.

## III.   Conclusion

In light of the foregoing, the Court finds that severance of the Plaintiffs' claims is warranted. Accordingly, it is hereby

**ORDERED:**

---

[4] In order to accomplish the Court's directive that the Order of Severance be docketed first in Drawdy's new civil case, the Clerk of the Court is authorized to file the Order of Severance with a "filed date" of January 1, 2000. The document itself, as well as the "entered on docket" date (EOD), will of course reflect the actual date of signature and entry.

1.    Plaintiff Delaina Rhodes will remain in this action. The claim of Plaintiff Lance Drawdy is **SEVERED** and **DISMISSED WITHOUT PREJUDICE**.

2.    The Court **DIRECTS** the Clerk of the Court open a new civil case for Plaintiff Drawdy, enter this Order of Severance in that new case with a filed date of January 1, 2000, copy all of the docket entries from the Joined Case into the new case, and direct assign that case to the undersigned and United States Magistrate Judge Patricia D. Barksdale.

3.    The deadlines and event dates established in the Court's Case Management and Scheduling Order (Doc. 9) will govern the ongoing proceedings in both cases.

**DONE AND ORDERED** in Jacksonville, Florida, on February 26, 2016.


MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record